IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARALINDA LONG GARZA, § § Plaintiff, § § V. § § CAROLYN W. COLVIN, § Acting Commissioner of Social Security, § § Defendant. § | No. 3:15-cv-1959-BN |

# **MEMORANDUM OPINION AND ORDER**

Plaintiff Maralinda Long Garza seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is reversed.

## **Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including back injuries, diabetes, and cardiomyopathy. *See* Administrative Record [Dkt. No. 12 ("Tr.")] at 193. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on October 11, 2013. *See id.* at 30-56. At the time of the hearing, Plaintiff was 53 years old. *See id.* at 32. She is a high school graduate, and has past work experience as an insurance clerk, receptionist, and office clerk. *See id.* at 23, 50-51. Plaintiff has not engaged in substantial gainful activity since December 1, 2012. *See id.* at 14, 34.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from diabetes mellitus, obesity, migraine headaches, obstructive sleep apnea, degenerative disc and joint disease affecting the cervical spine, an episode of cardiomyopathy in the very remote past, and carpal tunnel syndrome, *see id.* at 14, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations, *see id.* at 19. The ALJ further determined that Plaintiff had the residual functional capacity to perform her past relevant work as an insurance clerk or receptionist. *See id.* at 23.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on three general grounds: (1) the assessment of her residual functional capacity is not supported by substantial evidence and results from reversible legal error; (2) the ALJ improperly rejected the opinions of her treating physician; and (3) the Appeals Council failed to consider new and material evidence of her disability.

The Court concludes that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the

evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-

3

step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must

establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements

5

to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments Plaintiff makes is a single ground that compels remand – the ALJ improperly rejected the opinion of Plaintiff's treating physician.[1]

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

6

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted). But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456; *accord Hernandez v. Barnhart*, 202 F. App'x 681, 682-83 (5th Cir. 2006) ("Additionally, this court has held that considerable weight can be given to the opinions of non-treating physicians, especially when the treating physician's evaluation is unsupported by the evidence. An ALJ can discount the weight of the opinions of treating physicians relative to the opinions of others if the treating physician's opinion and diagnosis is unsupported." (citing *Newton*, 209 F.3d at 456; *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995)).

Social security regulations provide that the Social Security Administration "will always give good reasons in [its] notice of determination or decision for the weight [it] gives the claimant's] treating source's opinion" and list factors an ALJ must consider

7

to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c).

In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *Id.* at 466-67.

The ALJ found that Plaintiff retained the capacity to perform a modified range of sedentary work. Specifically, the ALJ found that Plaintiff can lift ten pounds occasionally and less than ten pounds frequently; that Plaintiff can stand and walk for two hours in an eight-hour day and sit for six hours in an eight-hour day; that Plaintiff is unable to climb, use ropes, scaffolds, ladders or crawl; that Plaintiff can occasionally

8

balance, stoop, kneel, and crouch; that Plaintiff must avoid temperature extremes, vibrations, hazards, and dangerous moving machinery; that Plaintiff is unable to perform reaching maneuvers overhead; that Plaintiff requires the ability to alternate sitting and standing every fifteen to thirty minutes as needed while at work; and that Plaintiff can frequently perform handling and fingering. *See id.* at 19.

On August 27, 2014, Plaintiff's treating physician, Leovares Mendez, M.D., completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical). *See id.* at 700-03. Dr. Mendez opined that Plaintiff can occasionally lift or carry less than ten pounds, stand or walk for less than two hours in an eight-hour work day, and sit for less than six hours in an eight-hour work day. Dr. Mendez also opined that Plaintiff must periodically alternate sitting and standing to relieve pain and discomfort. Dr. Mendez stated that his conclusions concerning Plaintiff's sitting, standing, and walking limitations were supported by his medical and clinical findings that Plaintiff cannot sit for any length of time past "fifteen minutes or so." *Id.* at 701.

Dr. Mendez also opined that Plaintiff is limited in both upper and lower extremities, cannot pull anything of weight, and can never perform any postural except for occasional balancing and that her reaching is limited. *See id.* Dr. Mendez stated that his conclusions concerning Plaintiff's manipulative limitations were supported by medical and clinical findings in a "functional capacity evaluation done on 01/17/2014 [in which Plaintiff] was not able to complete or do performance/job requirements due to her pain." *Id.* at 702.

9

Dr. Mendez was referring to a January 17, 2014 functional capacity evaluation performed at Pride Rehabilitation by Sarika Bhakhta, a physical therapist. *See id.* at 663-69. In that evaluation, Plaintiff's tested physical demand levels were below sedentary, and positional tolerance for initial job demands were not met for bending, sitting, walking, gripping, twisting, and keyboarding. *See id.* at 664, 666. It was noted that "Plaintiff was not able to sit for full length (30 mins.) of intake session." *Id.* at 666. It was also noted that the functional capacity evaluation results were "considered self-limited with functional testing because of self-reported pain" by Plaintiff, *id.* at 21, 665, and Plaintiff declined to participate in Bicycle Ergometry Testing because she felt it was unsafe for her. *See id.* at 21, 664.

And Dr. Mendez opined that it was not medically reasonable to expect Plaintiff's ability to maintain attention and concentration on work tasks throughout an eight-hour day to be significantly compromised by pain, prescribed medication, or both. *See id.* at 702.

Dr. Mendez submitted a post-hearing medical source opinion on January 31, 2015, in which he opined that Plaintiff was "very limited to the hours of standing, walking, sitting and lifting." Dr. Mendez further opined that Plaintiff was restricted to two hours or less of standing or walking, two hours or less of sitting, and five pounds or less of lifting or carrying due to chronic lumbar disorder. *See id.* at 752-756.

The ALJ concluded that Dr. Mendez's opinion was contradictory and, based on that conclusion, gave it little weight. *See id.* at 22. The ALJ noted that Dr. Mendez opined that Plaintiff could sit for less than six hours in an eight-hour work day and

that she must periodically alternate sitting and standing to relieve pain or discomfort. According to the ALJ, "Dr. Mendez indicated that the claimant could not work because of pain and, at the same time, he explained that the claimant's ability to maintain attention and concentration on work tasks throughout an eight-hour workday was not compromised by pain." *Id.* at 22-23. But the ALJ fails to explain how Dr. Mendez's opinion that Plaintiff's ability to maintain attention and concentration conflicts with his opinion that Plaintiff cannot sit long enough to meet the requirements for sedentary work, and, specifically, his medical and clinical findings that Plaintiff cannot sit for more than fifteen minutes.

The ALJ further discounted Dr. Mendez's opinion based on Dr. Mendez's observation that "'claimant had functional capacity evaluation done on January 17, 2014, and was not able to complete or do performance/job requirements due to her pain.'" *Id.* The ALJ found that the January 17, 2014 Qualitative Functional Capacity Evaluation by the physical therapist had "virtually no probative value. The claimant simply did not participate in the evaluation because she alleged that she experienced significant pain." *See id.* at 22.

The ALJ gave substantial weight to the examination of Gregory Powell, M.D., a consulting examiner, "rather than the functional capacity evaluation where the claimant simply refused to participate [in] the testing." *See id.* at 22. According to the ALJ, Dr. Powell's examination of Plaintiff "showed relatively benign difficulty." *Id.*

On December 20, 2013, Plaintiff was examined by Dr. Powell at Pride Rehabilitation. *See id.* at 615-18. Plaintiff reported post-operative back pain radiating

11

to her left foot and non-radiating mid back pain, as well as weakness, numbness, and tingling to her left lower extremity and some giving way of her left leg. *See id.* at 615. Plaintiff also reported that her pain was made worse by sitting, among other things, and, as a result, she modified her activities of daily living by reclining for sixteen hours each day. *See id.* at 616. Examination of the lumbar spine showed lumbar motion was severely restricted in flexion, extension, rotation, and side bending, with both flexion and extension producing pain and significant lumbar segmental rigidity at L3-L4, L4-L5, and L5-S-1. *See id.* at 617. The straight leg raising test was negative, but it reproduced back pain with limits of hamstring tenderness. *See id.* Dr. Powell's impression was postoperative, chronic low back pain. *See id.* at 618.

The ALJ also stated that his RFC finding was supported by the consultative examination performed by Rakiya Diallo, M.D., but did not state the amount of weight he gave that examination. *See id.* at 22. Dr. Diallo performed a consultive examination on July 1, 2013. *See id.* at 16, 300-09. In that examination, Plaintiff reported that she was unable to lift more than five to ten pounds, that she was unable to sit for more than ten minutes because of low back pain, and that walking aggravated the pain. *See id.* at 301. Plaintiff also reported decreased strength and exercise tolerance, joint/muscle pain, limitation of range of motion, and parasthesias. *See id.* at 302-03. Dr. Diallo noted that Plaintiff ambulated with a walker and took Norco to relieve pain. *See id.* at 301. Physical examination indicated a positive straight leg raising test; no range-of-motion testing was attempted; sensation was intact but there was pain to light touch; and Plaintiff had an antalgic gait. *See id.* at 304-05. Plaintiff's motor

strength was normal in all extremities, and Plaintiff's coordination and reflexes were normal. *See id.* at 16, 305. X-rays revealed that Plaintiff's lumbosacral fusions were stable. *See id.* Dr. Diallo diagnosed lumbago, lumbosacral spondylosis without myelopathy, cardiomyopathy, and diabetes mellitis not stated as uncontrolled. *See id.*

And the ALJ summarily stated, without discussion, that he gave partial weight to the disability determinations of two State agency medical consultants ("SAMCs"). *See id.* The SAMCs assessed Plaintiff with the ability to perform light work, including the ability to sit for six hours in an eight- hour work day and to stand or walk for six hours in an eight-hour work day. *See id.* at 59-66 (July 10, 2013), 77-86 (on reconsideration, September 17, 2013). But the ALJ found that Plaintiff was "more limited than what was reported by these non-examining sources." *Id.* at 22.

Similar to the facts in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Newton*, 209 F.3d at 458. Here, the ALJ rejected Plaintiff's treating physician's opinions without an existing controverting treating or examining physician opinion on the matters of Plaintiff's ability to sit or stand for extended periods of time. Therefore, pursuant to *Newton*, the ALJ was required to consider each of the Section 404.1527(c) factors prior to rejecting Dr. Meador's opinions.

The ALJ did recite, with no further elaboration, that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527" as well as other regulations. *See* Tr. at 19. But this statement, on its own, is not sufficient to satisfy

13

*Newton. See Nicaragua v. Colvin*, No. 3:12-cv-2109-G-BN, 2013 WL 4647698, at *6 (N.D. Tex. Aug. 29, 2013). The ALJ's decision fails to show that he conducted a detailed analysis of Dr. Mendez's opinions in accordance with the requirements of Section 404.1527(c). The ALJ did not even enumerate the Section 404.1527(c) factors, let alone discuss them in any sufficient level of detail. *See Tolbert v. Astrue*, No. 4:10-cv-349-L, 2011 WL 3759049, at *7 (N.D. Tex. Aug. 24, 2011).

The ALJ's failure to properly consider Dr. Mendez's opinions, which found disabling work-related limitations, is not harmless. The ALJ's hypothetical questions to the vocational expert ("VE") incorporated the ability to sit for six hours in an eight-hour day, "but [with] the ability to, if she needs to, get up and stand and stretch in the same work zone, every 15 to 30 minutes." *Id.* at 51. In response to the questions, the VE opined that Plaintiff could perform past relevant work as an insurance clerk or receptionist or other sedentary, unskilled jobs "with the caveat that the standing and stretching could not exceed ten percent of the workday." *Id.* at 51; *see also id.* at 52. The evidence shows that Plaintiff's standing and stretching may result in her being off task more than 10 percent of the work day, which, when coupled with her sitting limitation, would preclude competitive employment. Thus, Plaintiff was prejudiced because, if, after a proper analysis, the ALJ had given more weight to Dr. Mendez's opinions, he may have found Plaintiff disabled.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: June 8, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE